## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHANA COLON, *et al.*,

     Plaintiff,

v.                          CASE NO. 8:22-cv-888-TPB-TGW

KEVIN G. JOHNSON, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

The plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 266). The matter was referred to me. Upon consideration of the motion and related submissions, I recommend that the motion be granted.

### I.

The plaintiffs are former employees of Advanced Diagnostic Group (ADG), a company that provides diagnostic imaging services (Doc. 169, pp. 8, 11).[1] In December 2015, the Advanced Diagnostic Group Employee Stock Ownership Plan (Plan or ESOP) was established. Its

---

[1] The page numbers refer to the pages assigned by the CM/ECF docketing system.

purpose was to invest in ADG stock as a retirement benefit for employee participants (id., p. 8).   It qualified as a benefit plan under the Employee Retirement Income Security Act (ERISA).  Each plaintiff was a participant in the ESOP (id.).

The ESOP terminated on May 31, 2019 (id.).  The plaintiffs allege that, when the ESOP funds were distributed, the participants received only a fraction of the money that they were owed because the defendants had wrongfully diverted value from the ESOP (id., p. 7). Specifically, they received about $10.5 million in distributions, which represented a loss of approximately $1.25 million compared to the $11.69 million of contributions made to the ESOP on employees' behalf during the ESOP period (id., p. 30).

The defendants include ADG Management Holdings, LLC (the company created to look after the interests of ADG investors including the ESOP);  ADG and ADGMH board members; ADG officers; and GreatBanc Trust Company (the ESOP trustee) (see id., pp. 9-10).

On April 14, 2022, the plaintiffs filed this lawsuit as a proposed class action. The plaintiffs allege that the defendants violated several provisions of ERISA in their administration and management of the ESOP.

In June 2023, the plaintiffs filed a seven-count second amended complaint, alleging Breaches of Fiduciary Duties (Counts I, III, IV);

2

Prohibited Transactions Between Plan and Fiduciary (Counts II, VI); Prohibited Transactions Between Plan and Party in Interest (Count V); and Knowing Participation in ERISA Violations (Count VII). They seek, among other relief, recovery of losses caused by the defendants' alleged violations of ERISA, certification as a class action, and an award of reasonable attorneys' fees and costs.

Since the commencement of this lawsuit, plaintiffs' counsel has "devoted thousands of hours to investigating the facts, prosecuting the lawsuit [and] reviewing documents ..." (Doc. 267-1, p. 49). The plaintiffs served over 250 requests for production and the defendants, in response, produced 21,000 documents comprising 150,000 pages (Doc. 267, pp. 3-4). Furthermore, subpoenas to third parties produced 15,000 documents, comprising 250,000 pages (id.). The plaintiffs also deposed eight witnesses and engaged two experts who submitted reports prior to mediation (id.). Moreover, the plaintiffs filed a Motion for Class Certification and each defendant has moved to dismiss at least some of the claims raised in the Second Amended Complaint.

In January 2024, the parties participated in a two-day in-person mediation facilitated by Judge Mark Bennett (Retired). Judge Bennett is an experienced mediator and former Article III judge who has assisted in

resolving many class action lawsuits (id., p. 5).  Although the parties did not

reach a settlement at the in-person mediation, they continued negotiations

through Judge Bennett for nearly two additional weeks (id.).  Thereafter,

they reached a Settlement Agreement (Doc. 267-1).

The Settlement Agreement provides for $19 million dollars to

be deposited into a Qualified Settlement Fund (id., §4.2.2).  The settlement

class is defined as follows:

> All participants who were issued a distribution
> from the Plan, or their Beneficiaries or Alternate
> Payee, excluding Leigh Anne Fernandes and Dale
> Hersey.

(id., §1.42).  The plaintiffs determined that there are 185 Settlement Class

members (Doc. 267, p. 2).

The Agreement provides that each settlement class member

receive an amount of the net proceeds in proportion to the size of that

person's stake in the ESOP (id., p. 3).[2]  Under the Agreement, the Settlement

Fund will be reduced by attorneys' fees and costs, and administrative

expenses approved by the court.  The class counsel will seek up to one-third

of the gross settlement amount in attorneys' fees, which is $6,333,333.33

---

[2] If any checks are returned, the remaining funds will be redistributed to those class
members who successfully received an initial distribution.  The money will not revert to
the defendants.

(Doc. 267-1, p. 50).

Plaintiffs' counsel states that, "[n]et of fees and expenses estimated to be requested, the Settlement will more than double the ESOP distributions received by the Class" (Doc. 267, p. 3). The settlement class members, in consideration thereof, release all their claims that arise out of, or are related to, the administration and management of the Plan (Doc. 267-1, pp. 7-9).

The settlement class members will receive notice of the Settlement via first-class U.S. Mail (Doc. 266, p. 24). The plaintiffs summarize that the Notice contains:

> (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) the process for receiving distributions; (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the compensation they will seek; (8) the date, time, and location of the Fairness Hearing; and (9) Class Members' right to appear at the final approval hearing.

(id., p. 25). The Settlement Agreement will be posted on a website. The Notice will also inform the settlement class members that the website provides further information about the Settlement (id., p. 6). Further, the Notice will advise of a toll-free telephone line with a live operator that will

help class members understand the settlement process (id., p. 7).

The Plaintiffs' Unopposed Motion for Preliminary Approval of this Class Action Settlement was referred to me (Doc. 274). On May 2, 2024, I held a hearing on the motion (see Doc. 277).

At the hearing, plaintiffs' counsel iterated the efforts and diligence involved in reaching this Settlement, and the benefits to the putative settlement class members. I asked plaintiffs' counsel if there has been any indication of complaints from the putative class settlement members. She responded that she has heard from a number of them, and that they have been supportive of the proposed settlement. In this respect, she noted that many of them know each other because of their mutual employment with ADG and, thus, have learned about the proposed settlement.

As discussed below, the plaintiffs' memorandum and exhibits show that the plaintiffs have: (1) satisfied the requirements to provisionally certify the proposed settlement class, (2) established that the settlement is provisionally adequate, fair and reasonable, and (3) presented a notice that is adequate. I therefore recommend that the motion be granted.

II.

As a preliminary matter, "any analysis of class certification

6

must begin with the issue of standing." <u>Griffin</u> v. <u>Dugger</u>, 823 F.2d 1476, 1482 (11th Cir. 1987). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc.</u> v. <u>Robins</u>, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

The named plaintiffs allege that they sustained monetary harm resulting from the defendants' alleged unlawful conduct that can be redressed with a monetary award. Therefore, they clearly have standing in this matter.

III.

The plaintiffs also satisfy the requirements to provisionally certify the class.

> In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—<u>i.e.</u>, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.

<u>In re Checking Account Overdraft Litigation</u>, 275 F.R.D. 654, 659 (S.D. Fla. 2011).

The Rule 23(a) requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Id. The Court must also be satisfied that the proposed class "is adequately defined and clearly ascertainable." Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012).

Under Rule 23(a)(1), F.R.Civ.P., the court must determine whether "the class is so numerous that joinder of all members is impracticable." The plaintiffs have identified 185 people in the putative class (Doc. 266, p. 8). The Eleventh Circuit has found that more than forty is an adequate class size. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted) ("[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate ....'"). The numerosity requirement is therefore satisfied in this case.

Furthermore, the class is adequately defined and readily ascertainable based on business records maintained by the Plan's recordkeeper, who recorded all distributions (Doc. 267, p. 2).

The commonality component requires the plaintiffs to show that "there are questions of law or fact common to the class." Rule 23(a)(2), F.R.Civ.P. Thus, there must be a common contention that is capable of

classwide resolution, i.e., its determination will resolve an issue that is central to the validity of each of the claims. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

The commonality requirement is clearly met because "all members of the proposed Settlement Class received benefits from the ESOP, and their claims derive from the same asserted misconduct aimed at the ESOP" (Doc. 266, p. 9). See Romano v. John Hancock Life Ins. Co. (USA), No. 19-21147-CIV, 2022 WL 138663 at *15 (S.D. Fla. Jan. 14, 2022) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Common contentions capable of classwide resolution include whether each defendant was a fiduciary of the ESOP, whether the defendants failed to comply with ERISA's fiduciary standards of prudence and loyalty with respect to the ESOP, and whether there were prohibited transactions included in ESOP formation or termination transactions (see Doc. 169, pp. 104-05).

Next, the court evaluates whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), F.R.Civ.P. This requirement is tied to the commonality question and is designed to assure that the named plaintiffs' claims are

aligned with those of the class.  General Telephone Company of Southwest v. Falcon, 457 U.S. 147, 163 n.13 (1982).

As discussed, the plaintiffs' claims that the defendants' actions violated ERISA and that they breached their fiduciary duties are typical of all potential class members.  Furthermore, the injury flowing from defendants' allegedly unlawful actions is the same as to all putative class members.  Therefore, this element has been satisfied.

Additionally, the adequacy component of Rule 23(a)(4), F.R.Civ.P., requires a showing that "the representative parties will fairly and adequately protect the interest of the class."  The "adequacy of representation" analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).  The record shows that the putative class representatives' claims coincide with those of the proposed settlement class and that they desire the same outcome of this litigation.

Furthermore, the plaintiffs have participated throughout the action, representing the class interests as they do their own.  Therefore, there is no basis to conclude that they possess interests antagonistic to the putative

10

settlement class members.   See id. ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.").

Additionally, class counsel have adequately prosecuted this action (see supra, pp. 3-4), and there is no reason to think that they will not continue to do so. They clearly possess the qualifications and experience to handle this litigation and act as settlement class counsel, as well as the resources needed to litigate this matter (see infra, p. 22). Therefore, the adequacy requirement has been satisfied as well.

Finally, a plaintiff must establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b), F.R.Civ.P. Little v. T-Mobile USA, Inc., supra, 691 F.3d at 1304.

In this case, the plaintiff seeks certification under Rule 23(b)(1) (A) and (B) (Doc. 266, p. 11). That rule provides:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be

11

> dispositive of the interests of the other members
> not parties to the individual adjudications or would
> substantially impair or impede their ability to
> protect their interests....

The plaintiffs assert that "[t]he claims here plainly satisfy this test because they are brought derivatively on behalf of the Plan under ERISA ... and the outcome will necessarily affect the participants in the Plan and the Plan's fiduciaries" (id.).  Thus, certification under Rule 23(b)(1)(A) is appropriate because it will avoid subjecting defendants to "inconsistent or varying adjudications" on claims brought derivatively on behalf of the plan (id., p. 12); see Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1353 (11th Cir. 2001) ("Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves .... [t]he right to recovery ... belongs to the plan.").

Similarly, certification under Rule 23(b)(1)(B), F.R.Civ.P. is warranted because adjudications with respect to individual class members, as a practical matter, would be dispositive of the interests of the other members.  See Huang v. TriNet HR III, Inc., No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836 at *10 (M.D. Fla. Oct. 21, 2022) ( "A classic case of certification under Rule 23(b)(1)(B) includes 'actions charging a breach of trust by a[] ... fiduciary similarly affecting the members of a large class of

beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.'"); Advisory Committee Notes to Federal Rules of Civil Procedure, Rule 23, 1966 Amendment, p. 114 (instructing that certification under Rule 23(b)(1)(B) is appropriate where plaintiffs allege breach of fiduciary duty affecting the members of a large class of security holders or other beneficiaries). In sum, the putative class representatives have also satisfied the requirement of Rule 23(b), F.R.Civ.P.

I therefore recommend that the class be provisionally approved.

IV.

The plaintiffs have also shown that the proposed settlement warrants preliminary approval.

> Rule 23(e)(1) authorizes a court to grant preliminary approval of a proposed class action settlement ... so long as the moving parties demonstrate that the court will "likely be able to" grant final approval to the settlement. Rule 23(e)(2) in turn authorizes final approval only upon a showing that the settlement is "fair, reasonable, and adequate ...."

4 Newberg and Rubenstein on Class Actions, § 13:15 (6th ed.); see also Advisory Committee Notes to Federal Rules of Civil Procedure, Rule 23, 2018 Amendment, p. 122.

Rule 23 identifies four factors to consider in determining whether a settlement is fair, reasonable and adequate. They are whether: (A)

the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[3] ... and (D) the proposal treats class members equitably relative to each other. Rule 23(e)(2), F.R.Civ.P.

"The four core concerns set out in Rule 23(e)(2) provide the primary considerations in evaluating proposed agreements...." Ponzio v. Pinon, 87 F.4th 487, 495 (11th Cir. 2023). These factors do not, however, displace tests previously developed by the courts to make this determination. Id. at 494.

In this regard, the Eleventh Circuit's complementary approach examines:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Id.

---

[3] The adequacy determination, in turn, requires the court to "take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment." Rule 23(e)(2)(c), F.R.Civ.P.

Considering all the pertinent factors, the proposed Settlement Agreement appears fair, reasonable and adequate.

Most importantly, the $19 million dollar settlement provides substantial monetary relief for the class. The settlement amount, on a gross per class member basis, is $102,703, and, even after accounting for substantial reductions for attorneys' fees and expenses, the settlement "will more than double the ESOP distributions received by the Class" (Doc. 266, p. 22). The plaintiffs assert that the gross amount, which equals 22%-28% of each expert's maximum damages calculation, is within the range of recent ESOP settlements (id., pp. 20-21) (chart of ESOP settlements which show recovery percentages varying from 7% to 39%).

Furthermore, the plaintiffs emphasize that the risk, cost, and delay of further litigation support the approval of the Settlement Agreement (id., pp. 18, 20). See Rule 23(e)(2), F.R.Civ.P. The defendants are vigorously defending the plaintiffs' claims and there is uncertainty attendant to the outcomes of the pending motions to dismiss and the motion for class certification. Of course, even if the plaintiffs prevail on these pending motions, the outcomes of anticipated summary judgment motions and a possible trial are unknown (Doc. 266, p. 17).

Moreover, the plaintiffs state that, because "the case is large and

complex" a trial "would have required Plaintiffs to conduct further discovery, including expert depositions, multiple summary judgment motions, and "significantly delayed relief to Class Members" even assuming they would ultimately prevail (id., pp. 16, 17). In sum, continued litigation would be very costly and greatly delay any possible relief. Therefore, under the circumstances, the proposed settlement is a fair and reasonable compromise of the putative class members' claims.

Importantly, the proposed settlement was negotiated at arm's length by knowledgeable and experienced counsel, and facilitated by an experienced and highly regarded mediator. Specifically, counsel for the parties are familiar with ERISA and class action litigation. Furthermore, plaintiffs' counsel's understanding of this case was evident at the hearing, and the motion for preliminary class action and accompanying affidavits and exhibits are comprehensive. The class representatives have also been actively engaged in the litigation, have no conflicts with the class, and seek no individual relief (see Doc. 266, pp. 10, 15).

I emphasize that the involvement of an experienced and respected mediator who has successfully resolved numerous class action cases particularly undercuts the possibility of fraud or collusion behind the settlement. See Seliem v. Islamic Soc'y of Tampa Bay Area, Inc., No. 8:18-

cv-1590-T-33AEP, 2018 WL 11650014 at *2 (M.D. Fla. Nov. 20, 2018) ("[T]he parties reached the settlement after attending mediation with a well-respected mediator, so there is no reason to suspect the existence of fraud or collusion behind the settlement.").

Additionally, the parties engaged in substantial discovery prior to agreeing to the settlement of this matter, including hundreds of discovery requests, production of tens of thousands of documents, depositions of eight witnesses, and the engagement of two experts (Doc. 266, pp. 3-4; Doc. 267, p. 4). This circumstance indicates that the parties understood the strengths and weaknesses of the case and its resolution was not unreasonably premature.

Significantly, moreover, the settlement in this case must be reviewed and approved by an independent fiduciary pursuant to U.S. Department of Labor (DOL) requirements (Doc. 276, p. 1). This evaluation will provide yet another layer of review of the adequacy and reasonableness of the settlement. See In re Marsh ERISA Litig., 265 F.R.D. 128, 139 (S.D.N.Y. 2010) ("The Independent Fiduciary's approval is critically important.").

Finally, there is no evidence presently of opposition to the Settlement Agreement. Notably, plaintiff's counsel stated at the hearing that

17

she has heard from a number of putative class members who support the proposed settlement. Of course, this factor will be subject to meaningful evaluation after the objection period ends.

In sum, the evidence supports the preliminary finding that the Settlement Agreement is fair, adequate and reasonable.

Next, Rule 23(e)(2)(C)(ii), F.R.Civ.P., requires an evaluation of "the effectiveness of any proposed method of distributing relief to the class." In this respect, the putative settlement class members will have the option of receiving an immediate distribution or obtain their settlement distribution "in the form of a rollover to another qualified retirement account" (Doc. 266, p. 22). This will potentially avoid negative tax consequences that the class members will incur if they receive their distribution prior to retirement age. Therefore, the parties have proposed an effective method of distributing relief to the class.

Rule 23(e)(2)(C)(iii), F.R.Civ.P., requires the court to also examine the terms of any proposed award of attorneys' fees. Plaintiffs' counsel stated at the hearing that they would be seeking $6,333,333.33, which is one-third of the gross settlement amount, plus reimbursement of litigation costs.[4]  Counsel asserts that one-third is the percentage typically

---

[4] Plaintiffs' counsel has incurred approximately $700,000.00 in costs and expenses as of

awarded for attorneys' fees in class actions cases (Doc. 266, p. 23) (listing cases).  There is no apparent reason to deviate in this case from the typical percentage award of attorneys' fees.  Furthermore, since class counsel will file a motion for an award of Attorneys' Fees and Costs and Administrative Expenses at least thirty days before the Final Fairness Hearing, a putative settlement class member may state objections to the proposed amount.

Additionally, under Rule 23(e)(2)(D), F.R.Civ.P., the court must consider whether the proposal treats class members equitably to each other.  The proposed process is for class members to receive awards in proportion to their prior distributions from the ESOP (Doc. 266, p. 24).  This method allocates the settlement funds based on the size of each class member's respective stake in the terminated ESOP.  There is also no bonus or other compensation to the named plaintiffs for their efforts in prosecuting this case.  Therefore, this method treats the class members equitably.

## V.

The final Rule 23(e) element is that notice of the proposed settlement agreement be issued "in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1)(B), F.R.Civ.P.

The notice shall be as "best [as] is practicable under the

---

March 27, 2024 (Doc. 267, p. 5).

circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B), F.R.Civ.P. Its contents must reasonably apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174 (1974).

The plaintiffs' proposed Settlement Notice satisfies these criteria. The Notice explains why a settlement class member is receiving the notice; outlines the terms of the Settlement Agreement and the process for submitting a claim; states the process for objecting to the Settlement Agreement; identifies class counsel and the compensation they will seek; the date and time of the final settlement approval hearing at which they have a right to appear; and states the consequences of not taking action (see Doc. 267-1, pp. 47-56). The Settlement Notice also informs the class members of two additional sources of information: a website and a telephone support line with a live person to answer questions about the Settlement Agreement (id., p. 55).

Furthermore, the Notice will be sent via first-class United States mail, which is identified in Rule 23 as an acceptable service method. Rule 23(c)(2)(B), F.R.Civ.P; see also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (A fully descriptive notice is sent first-class mail to each

class member satisfies due process.).  Therefore, I recommend that the court find the content and method of the proposed notice is compliant with Rule 23, F.R.Civ.P., and the requirements of due process, and that it is the best notice practicable under the circumstances.

Notably, since the putative class is comprised of a relatively small group of individuals that were employed by ADG, putative class members are also obtaining information about the proposed settlement from each other.

The plaintiffs further propose that Analytics Consulting, LLC, be selected to serve as the settlement administrator in this matter (Doc. 267, p. 7).  Analytics Consulting, LLC, has been appointed as the settlement administrator for nearly 1,000 class and collective actions, including ERISA actions (Doc. 272, p. 1).  As relevant here, it has experience in facilitating tax compliance attributes of settlement distribution plans (id.).  Additionally, plaintiffs' counsel noted that "Analytics was selected following a competitive bidding process and they were the most competitive" (Doc. 267, p. 7).  Therefore, I recommend that Analytics Consulting, LLC, be appointed as the settlement administrator in this case.

## VI.

Rule 23(g)(4), F.R.Civ.P., also requires the court to appoint

"[c]lass counsel ... [who will] ... fairly and adequately represent the interests of the class."  Pertinent factors to consider in making this determination include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Rule 23(g)(1)(A)(i-iv).  It is requested that Engstrom Lee LLC and Wenzel Fenton Cabassa, P.A., be appointed as class counsel for the settlement class (Doc. 267-1, p. 65).

The declaration of proposed lead settlement class counsel Jennifer K. Lee reflects that she is a highly skilled and experienced litigator in class actions and ERISA cases (Doc. 267, pp. 5-7).  Attorneys Carl Engstrom, Brandon McDonough, and Mark Thomson from Engstrom Lee are also highly experienced in litigating ERISA cases (see Doc. 267-3). Additionally, proposed local co-counsel, Brandon J. Hill, of Wenzel, Fenton & Cabassa, P.A., is experienced in class action cases (Doc. 271). Moreover, plaintiffs' counsel have spent substantial resources investigating and litigating these claims for almost two years, including advancing

approximately $700,000 in costs and expenses (see Doc. 267, pp. 3-5). This strongly shows their commitment to representing their clients adequately. Therefore, plaintiffs' counsel clearly satisfies the requirements to be appointed as settlement class counsel. See Rule 23(g)(1)(A)(i)-(iv).

VI.

Finally, as indicated supra, the proposed Settlement Agreement must be reviewed and approved by an independent fiduciary (Doc. 276, p. 1). The parties propose the appointment of Fiduciary Counselors, Inc., for review and approval of the Settlement Agreement (see id., p. 2).

Under well-established ERISA law, an ERISA plan that gives a litigation release to a "party of interest," such as the company itself or its employees, engages in a prohibited transaction under ERISA. However, in 2003, the Department of Labor ("DOL") promulgated a Prohibited Transaction Exemption permitting such releases if an independent fiduciary approves the terms of the settlement that include the release (PTE) (see Doc. 276, p. 1). The independent fiduciary issues its report prior to the Fairness Hearing so the Court may consider it (Doc. 266, p. 7).

Fiduciary Counselors, Inc., has extensive experience in providing independent fiduciary services, including reviewing over 100 settlements under the PTE (see Doc. 276-1). The fee for its service is

23

$20,000 (id., p. 2). The parties request that the court approve payment or reimbursement of up to $25,000, to account for fees and expenses (Doc. 266, p. 7, n.3). This expense is consistent with what has been approved in other cases (id.). The review is a requirement for settling this matter, and I have no basis to conclude that this fee is unreasonable. I therefore recommend the appointment of Fiduciary Counselors, Inc., to review the proposed settlement as required under the PTE.

## VII.

For the above reasons, I recommend that the Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 266) be granted. Accordingly, I recommend further that:

(1) the parties' Proposed Notice be preliminarily approved;

(2) Engstrom Lee LLC and Wenzel Fenton Cabassa, P.A., be appointed as counsel;

(3) Analytics Consulting, LLC, be appointed as the Settlement Administrator; and

(4) Fiduciary Counselors, Inc., be appointed as the independent fiduciary to review and offer its opinion as to the approval of the Settlement Agreement.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 31, 2024

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.